(42 South. 931.)

No. 16,128.

BYERLEY et al. v. WALKER et al.

(Jan. 7, 1907. On Rehearing, Feb. 4, 1907.)

1. HUSBAND AND WIFE—NOTES OF WIFE—DEBT OF HUSBAND.

Where, as an incident to an agreement made by him, the husband was to buy, on a credit, at par, certain commercial stock, worth a great deal less than par, and give his wife's security for same, and, on the parties discovering that the wife could not legally bind herself for her husband's debt, the sale was made to the wife, and her notes were executed for the price, secured by mortgage on her property, *held*, that the substitution of the wife as purchaser was a mere disguise of the real transaction, and that the notes were in reality for a debt of the husband, and in consequence null. It makes no difference that the wife was separate in property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Husband and Wife, §§ 629, 630.]

2. SAME — ACTION BY WIFE — JUDGMENT AGAINST HUSBAND.

In the absence of the husband from the suit, judgment cannot be rendered against him for the debt, nor any inquiry made into the question of title as between him and his wife.

(Syllabus by the Court.)

Appeal from Ninth District Court, Parish of East Carroll; Francis Xavier Ransdell, Judge.

Action by Nita H. Byerley and husband against R. J. Walker and W. E. Dunn. Judgment for plaintiffs, and defendants appeal. Affirmed.

Charles Stewart Wyly, for appellants. Davis & Browne and Snyder & Gilfoil, for appellees.

PROVOSTY, J. The defendant Walker held the position of cashier in the First National Bank of Lake Providence, and he owned some stock of the bank, and also $4,000 of the stock of the Carroll Oil & Ice Company of the same place. Plaintiff's husband held the position of bookkeeper in the same bank. The salary of defendant as cashier was $185 per month, and that of plaintiff's husband $60. Defendant and plaintiff's husband agreed that plaintiff's husband would buy the bank stock at 25 per cent. premium and the oil mill stock at par, and that defendant would resign his position and do all he could to get plaintiff's husband elected to it at the same salary. In payment of the oil mill stock, plaintiff's husband was to make his 40 notes of $100 each, payable monthly, and was to secure the payment of same by a mortgage to be given by his wife on her property. The idea was that the notes would be paid out of the increased salary of the husband. When the parties came to carry out the agreement, they discovered that the wife could not bind herself for her husband's debt, and, for obviating the difficulty, the sale of the oil mill stock was made to the wife instead of to the husband; and, accordingly, she executed the forty $100 notes in place of her husband, and gave a mortgage on her property to secure the same. The book value of the stock was 56 cents on the dollar, and its market value was less, and soon fell to nothing at all. There can be no doubt from the evidence that the gist of the transaction was that the husband was to be made cashier and get the greater salary, and that the purchaser of the oil mill stock was a mere incident to the main transaction, merely one of the inducements for the defendant to enter into the agreement; that the so-called purchase by the plaintiff was not an independent transaction, but a mere carrying out of the original agreement; and that therefore the debt for this stock continued to be a debt of the husband. As a matter of fact, during the four months that he occupied the position of cashier, and drew the salary of the position, he faithfully paid to

the defendant each month one of the so-called notes given by his wife. Plaintiff testifies that she was unwilling to lend herself to the scheme, but finally yielded her consent, under stress of marital influence.

Defendant sued out executory process on the mortgage thus given by plaintiff, and plaintiff brought the present injunction suit, claiming that the debt is her husband's, and that she could not bind herself for it, and that in consequence the mortgage is a nullity.

It is well settled in our jurisprudence that the courts will look through all disguises and protect the wife in her property. Bisland v. Provosty, 14 La. Ann. 172; West v. De Moss, 50 La. Ann. 1349, 24 South. 325. The facts, we think, present a clear case of the wife having bound herself for a debt of her husband. It makes no difference that the wife was separate in property at the time she made the purchase, since the making of the sale to her, instead of to the husband, was a mere subterfuge for circumventing the law established for her protection.

In his answer, defendant, after insisting on the validity of the mortgage given by the wife, pleads in the alternative that the property was acquired during the existence of the community, and is community property because not purchased with the separate funds of the wife, and he prays that the court decree the mortgaged property to belong to the husband and condemn him to pay the debt.

There are several reasons why this prayer cannot be listened to, one only of which need be mentioned. It is that defendant cannot have any standing to litigate the title to this property as between the plaintiff and her husband until he has proved himself to be a creditor of the husband, and that he cannot make this proof in the present suit because the husband is not a party to the suit. The husband has not even joined in the suit to authorize his wife. He has contended

himself with furnishing her with a separate authorization to bring the suit.

Judgment affirmed.

## On Rehearing.

PER CURIAM. The court does not decide that the mortgage given by the husband is invalid, nor orders the mortgage in question in this suit to be canceled, in so far as same may have been given by the husband, but only in so far as given by the wife.

Rehearing refused.